[Civ. No. 20027.  Second Dist., Div. Three.  July 29, 1954.]

CORA L. DARVEAU, Respondent, v. KVVC THE VOICE OF VENTURA COUNTY (a Corporation), Appellant.

William H. Haupt for Appellant.

Harry C. Wesley for Respondent.

WOOD (Parker), J.—Action for damages allegedly resulting from destruction of part of a bean crop on land owned by plaintiff and leased by her to William Yearout on a crop-sharing basis. Defendant appeals from judgment in favor of plaintiff.

Plaintiff owned about 61 acres of land in Ventura County. Since 1939 Mr. Yearout, as farm tenant on a year to year basis, had raised beans on 27 acres of the land. About May 1, 1947, plaintiff and defendant entered into a written lease whereby plaintiff leased to defendant a portion of the 61 acres, which portion included part of the 27 acres on which beans had been raised. The land was leased for 20 years to be used by defendant for the purpose of construction, operating and maintaining a radio station thereon. Under the terms of the lease, defendant had the exclusive right to use a certain part of the land so leased, and plaintiff reserved the right to farm the remaining part of the land so leased to defendant; defendant had the right to construct and maintain such underground wires as may be required—the wires to be buried at least 15 inches below the surface, and to construct and maintain a water pipeline across the land of plaintiff; and defendant had the right of ingress and egress for the purpose of maintaining its antenna and ground system, "provided, however, that in the event the exercise of such right shall cause damage to any crops planted or growing on said lands, Lessee [defendant] shall pay such damages to the Lessor, or to any tenant holding under said Lessor." On June 26, 1947, plaintiff and Mr. Yearout executed a written lease, which was dated November 15, 1946, whereby plaintiff leased the 61 acres of land to Mr. Yearout for a period of three years, subject to the terms and conditions of the lease to defendant. The lease to Yearout provided further that Yearout would deliver to lessor (plaintiff), sacked and cleaned, "two-fifths of all beans and bean straw produced on said premises" as rental under the lease.

On May 11, 1947, Yearout planted lima beans on the same 27 acres of land he had previously used for raising lima beans. In June, while the beans were growing but before the vines had bloomed, defendant laid a water pipeline across 1,566 feet of the land which was planted in beans, and in laying that pipeline defendant destroyed the bean plants in an area that

was 1,566 feet long and 13 feet wide. During the latter part of June, defendant began installing underground wires and completed the installation in August, 1947. In the process of installing the wire, defendant caused damage to other bean plants. The wires were not installed deep enough, and in September after some of the vines were cut but before the beans were harvested, a second installation of wire was made which resulted in further damage to the bean crop. Mr. Yearout filed an action against defendant for damages to the bean crop. In a trial by jury, in January, 1949, Yearout recovered judgment for $2,666.

In 1950, defendant was a debtor corporation in proceedings instituted by it for its reorganization under laws relating to bankruptcy, which proceedings were pending in the United States District Court at Los Angeles. On November 21, 1950, plaintiff filed a claim in said proceedings which claim stated that defendant was indebted to plaintiff in the amount of $1,777.33 for ''Damage by Debtor to bean crop planted and growing on said leased premises at the time of the replacing of the underground wires around the Antenna Towers placed upon said leased premises all as provided in the terms of the written lease dated the 1st day of May, 1947, wherein claimant was Lessor and the Ojai Broadcasting Company, now known as KVVC The Voice of Ventura County, debtor above named, was the Lessee; . . .'' On December 15, 1950, the federal court made an order which stated, in the recital portion thereof, that the claim ''is unliquidated as to amount, and is a claim for damages.'' In the order part thereof, it was stated that the claim ''asserting and claiming damages in the sum of $1,777.33 be, and the same is hereby disallowed, unless within ten days from and after the 5th day of December 1950 the claimant shall have filed an action in the appropriate court of the State of California for the purpose of liquidating said claim, . . . The claimant Cora L. Darveau is granted permission to commence and prosecute an action in the appropriate court of the State of California, against the above named debtor, for the purpose of liquidating the claim aforesaid, and for no other purpose, . . .''

On December 11, 1950, plaintiff filed the present action in the Superior Court of Ventura County. In the first cause of action of the complaint it was alleged that she filed her claim for $1,777.33 in the reorganization proceedings; the federal court made an order granting her permission to prosecute the

action; the parties made the lease; before the beginning of construction of the broadcasting station. the president of defendant corporation orally stated to plaintiff that defendant would compensate her for damage to plaintiff's bean crop growing on the premises which might result by the erection of the station; about July, 1947, defendant began the construction of the station on the premises which were at said time planted to lima beans; defendant completed installation of the ground wires, the laying of the water pipeline, and erection of the towers and buildings while plaintiff's beans were growing on the premises and while the beans were being harvested, and "did run over and trample said beans and destroy same to plaintiff's damage in the sum of $1,777.33." It was alleged in the second cause of action (after incorporating therein the allegation of the first cause of action regarding the claim and order of court) that about July, 1947, defendant began construction of the water pipeline, two towers, a building, and the installation of ground wires on the premises which were at that time planted to lima beans which were then growing thereon, and did run over, trample, and destroy the beans to plaintiff's damage in the sum of $1,777.33.

Defendant denied the allegations of the complaint regarding the claim and order, and alleged that a copy of the order was attached to the answer; denied that the president of defendant stated that defendant would compensate plaintiff for damage to her bean crop; and denied that plaintiff had been damaged in any amount.

The parties stipulated that the cause be tried upon a transcript of the evidence in the action by Yearout against defendant; upon some of the exhibits received in that action; upon a copy of the claim (filed by plaintiff) upon which this action is based; and that the transcript, and the exhibits (received in the present trial), should contain no reference to an offer of compromise, or argument of counsel. They also stipulated that witnesses for Yearout in the former action should be deemed witnesses for plaintiff in the present action, and witnesses for defendant in the former action should be deemed witnesses for defendant in the present action. The case was submitted for decision, and a few days thereafter the could found that all the allegations of the complaint were true. Judgment was for plaintiff for $1,777.33.

Appellant contends that the trial court exceeded its

jurisdiction. It argues that the court tried damage issues which were beyond the scope of the order of the federal court granting respondent permission to prosecute an action upon her claim; that her claim was for damages to the bean crop at the time of replacing the underground wires, and the order of the federal court granted her permission to prosecute an action for the purpose of liquidating "the claim aforesaid"; that, in view of such statements in the claim and order, the court was not authorized to try an issue as to damage to the plants or crop caused at the time of the construction of the radio station. The order of the federal court did not grant jurisdiction to the state court—it granted permission to respondent to prosecute an action upon her claim in the state court. The claim was for damage to the bean crop. The claim states that appellant was indebted to respondent for damage "to bean crop planted and growing on said leased premises at the time of the replacing of the underground wires." The words "at the time of the replacing of the underground wires" could have reference only to the crop "growing" at the time of replacing the wires,—those words would not also refer to a bean crop that was "planted" at that time. The beans were planted on May 11, before the construction of the radio station was started. When the water pipeline was installed in June, and when the underground wires were first installed in July and August, some of the plants were damaged. When the underground wires were replaced in September, the beans, which were then growing or being harvested, were also damaged. In view of the fact that there was damage to the plants (before beans grew on them) and there was damage to the beans (while growing or being harvested), a reasonable interpretation of the claim is it was a claim for all damage to plaintiff's interest in the bean crop, whether it was damage to the plants or to the beans. It is reasonable to conclude that the order of the federal court was intended as permission for respondent to sue for all her damage resulting from injury to the bean crop, not exceeding $1,777.33. The action commenced by respondent was for said amount as damages to the bean crop, resulting from the construction of the radio station, the water pipeline, and the installation of underground wires. The allegations of the complaint were within the scope of the order of the federal court.

Appellant also contends that respondent had no title to, or lien on, the bean crop and she could not maintain an action for damage to the crop. It argues that the relationship

of landlord and tenant existed between respondent and Mr. Yearout, and that his rent was to be paid by delivering, after harvest, a part of the crop to her or to a warehouse for her benefit; and that the tenant had the sole right of action. Mr. Yearout, the tenant, obtained judgment for damages to the bean crop in the amount of $2,666. Respondent asserts that Mr. Yearout's action was to recover three-fifths of the damage to the crop, and that the judgment was for that part of the damage. The appellant asserts in effect that the judgment was for all the damage. It appears that the action by Mr. Yearout was tried on the theory that he was seeking three-fifths of the damage. During that trial, Mr. Yearout testified that three-fifths of the total amount of beans damaged belonged to him. Mr. Haupt, who is counsel for defendant corporation herein, was president of said corporation at the time of the trial of the Yearout action. In that trial Mr. Haupt, who was called as a witness by defendant, was asked the following questions and he gave the following answers: ''Q. And you knew that you had damaged his beans, didn't you? A. Yes. Q. How much did you damage them? A. Not over 50 percent at the very most.'' ''Q. You admit now that you damaged between 65 and 70 sacks of beans belonging to Mr. Yearout, is that correct? A. No, not belonging to Mr. Yearout. A total of 65 to 70 sacks of beans is what I said. Q. All told, which Mr. Yearout would be entitled to three-fifths of them, is that correct? A. Yes. Q. You admit that much, don't you? A. That is right.'' It thus appears that Mr. Yearout (the tenant and plaintiff) and Mr. Haupt (president of defendant) made statements during the former trial which were sufficient to establish that the case was tried on the theory that Mr. Yearout was seeking three-fifths of the total damage. It seems that during the trial of the Yearout case Mr. Haupt was of the opinion that the damages should be paid to the landowner. He testified during that trial that, prior to beginning the construction of the station, he explained to Mr. Yearout that defendant would pay the landowner for damage to the bean crop. A provision of the lease is ''Lessee shall at all times have the right of ingress and egress in, to and over said lands for the purpose of maintaining its antenna and ground systems, provided however, that in the event the exercise of such right shall cause damage to any crops planted or growing on said lands, Lessee shall pay such damages to the Lessor, or to any tenant holding under said Lessor. . . .'' Respond-

ent was entitled to maintain the present action for two-fifths of the damage to the bean crop.

██ Appellant also contends that the damages awarded were excessive. Mr. Yearout testified that in laying the water pipe, defendant destroyed all the bean plants in an area 1,566 feet long and 13 feet wide, consisting of 5 rows; that a 90 per cent loss was sustained in the area over which defendant traveled in making the second installation of ground wire; he sold his 1947 crop of beans for $22 per sack of 100 pounds each; he lost about 19 sacks of beans per acre in the damaged area, which area was about 11 acres (a total amount of $4,598). The evidence supports the award of damages.

██ Appellant contends that counsel for plaintiff was guilty of prejudicial misconduct, in that, (1) he obtained the file in the Yearout action, and presented it, without the knowledge of counsel for appellant, to the trial judge in chambers; and, (2) he stated to the judge that Yearout recovered a judgment in the amount of $2,666, that said judgment represented three-fifths of the total damage done to the crops, and that the Yearout action was tried upon the theory that Yearout could recover only three-fifths of the total value of the crops damaged. Appellant asserts that the file in the Yearout action contained numerous documents, including instructions and exhibits concerning an effort to compromise which, under the stipulation herein, were not to be presented to the trial court. That same assertion was made to the trial court upon the hearing of the motion for a new trial. In plaintiff's affidavit in opposition to the motion he stated that at the time the Yearout case was submitted upon the stipulation, the exhibits in the Yearout case (which were to be used in the present case) were segregated by counsel for the parties and were handed to the clerk for delivery to the judge; that after the cause was submitted he (counsel for plaintiff) asked the judge if he could make a decision "before the time as fixed by the Federal Court expires," and the judge stated that he would endeavor to read the transcript and make a decision within the time allowed; counsel then asked the judge if he (counsel) could be of assistance in getting the transcript and the files delivered to the judge; counsel went to the office of the clerk, and he found that the transcript and exhibits in the former action had been restored to the files and the exhibits had been placed in an envelope; counsel asked the clerk if the transcript and exhibits could be separated from the file and the clerk said that only the judge had authority to separate the files; the file

in the present action and the file in the former action, containing the transcript and the exhibits, were then delivered to counsel for plaintiff who visited the judge in chambers, laid the files on his desk, and said, ''Here is the file in the present action and the file in the former action, which contain the transcript and the exhibits in an envelope, which are to be used in the present action.'' The settled statement on appeal shows that during argument on the motion for a new trial counsel for plaintiff made substantially the same statements which were in his affidavit, and that counsel for appellant stated, ''The file contained instructions and exhibits regarding a proposed compromise.'' The judge then stated ''I paid no attention to that.'' An affidavit of the trial judge, which is attached to the clerk's transcript on appeal, recites that he did not read the Yearout file and that, in deciding the cause, he considered only the evidence in the transcript of the Yearout cause and the exhibits mentioned in the stipulation of the parties; and it recites further that the facts relative to delivery of the file to the court are correctly set forth in the affidavit of plaintiff's counsel. Appellant asserts further that, upon the trial of this action, counsel for plaintiff made oral statements regarding matters which were not included in the transcript and exhibits upon which the action was to be tried. As above shown, he argues that plaintiff's counsel stated to the court that Yearout recovered judgment in the amount of $2,666, and that said judgment represented three-fifths of the total damage done to the crops, and that the Yearout action was tried upon the theory that Yearout could recover only three-fifths of the total value of the crops shown to have been damaged. During the argument prior to submitting the present case for decision, counsel for appellant argued that ''plaintiff could not recover in this action for the reason that, in the former action wherein William M. Yearout was the plaintiff, Yearout recovered judgment for all the damages and that the judgment was paid. . . . '' Said counsel then asked if counsel for plaintiff would stipulate that the judgment was paid. Plaintiff's counsel stated that the judgment was paid ''but the former action was tried and submitted to the jury'' on the theory that Yearout could recover only three-fifths of the actual damage to the crops. Counsel for appellant then stated that the Yearout action ''was not tried and submitted on that theory.'' It thus appears that counsel for appellant was the one who first raised the question as to whether all the damage

was included in the former action—he argued that Yearout recovered judgment for all the damage. The reply of counsel for plaintiff, regarding the theory upon which the former action was tried, was responsive to that question. The contention that counsel for plaintiff was guilty of prejudicial misconduct is not sustained.

By reason of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Shinn, P. J., concurred.

Vallée, J., dissented.